IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ER ADDISON, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:25-CV-2861-D |
| | § | |
| AETNA HEALTH, INC, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action by plaintiffs ER Addison, LLC, ER Hulen, LLC, ER Coit,

LLC, and ERNearMe Plano, LLC (collectively, "ER")—free-standing emergency centers

("FECs")—against defendants Aetna Health, Inc., Aetna Health Management, LLC, and

Aetna Life Insurance Company (collectively, "Aetna")—heath insurance providers—Aetna

moves to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).  For the reasons that

follow, the court grants Aetna's motion in part and denies it in part.

I

This lawsuit arises from Aetna's alleged underpayment for emergency healthcare

services that ER provided on an out-of-network basis to Aetna's insureds.[1]  In a prior version

---

[1]In deciding Aetna's motion to dismiss, the court construes ER's state-court original petition in the light most favorable to ER, as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in ER's favor.  *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d

of this lawsuit, *ER Addison, LLC v. Aetna Health Inc.*, No. 3:24-CV-1816-D, ER sued Aetna

under ERISA[2] and Texas law, seeking payment in full for the services it rendered in several

of its FECs.  The court dismissed ER's suit because it failed to prove that ER had standing

to assert the claims of Aetna's insureds.[3]  *ER Addison, LLC v. Aetna Health Inc.* ("*ER

Addison I*"), 2025 WL 1869591, at *2-3 (N.D. Tex. July 3, 2025) (Fitzwater, J.).

After the court filed its decision in *ER Addison I*, a panel of the Fifth Circuit decided

*Angelina Emergency Medicine Associates PA v. Blue Cross & Blue Shield of Alabama*, 156

F.4th 505 (5th Cir. 2025),[4] which ER contends resulted in a "change in intervening law."

Pet. (ECF No. 1-2) at 1 n.1.  ER re-filed its lawsuit against Aetna, this time in state court.

---

383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See, e.g.*, *Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id*.  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id*. (citation omitted) (citing *Paterson*, 644 F.2d at 523).

[2]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

[3]The court dismissed ER's federal ERISA claim without prejudice under Rule 12(b)(1), *ER Addison, LLC v. Aetna Health Inc.*, 2025 WL 1869591, at *2-3. (N.D. Tex. July 3, 2025) (Fitzwater, J.), and declined to exercise supplemental jurisdiction over ER's state-law claims, *id.* at *3.

[4]*Angelina Emergency Medicine Associates PA v. Blue Cross & Blue Shield of Alabama*, 150 F.4th 393(5th Cir. 2025), was decided on August 8, 2025.  ER filed its petition in this case on September 2, 2025.  On October 23, 2025, after a panel rehearing, the previously-issued opinion in *Angelina* was withdrawn, and the panel substituted a new opinion, which is cited here.

ER's state-court original petition (its operative pleading) identifies between 3,452 and 3,620 claims that it alleges Aetna has underpaid.  ER asserts a federal-law claim under ERISA (count one); a state-law claim with respect to "Non Self-Funded ERISA Plan Claims" for breach of contract (count two); a negligent misrepresentation claim (count three); an unjust enrichment claim (count four); a claim for declaratory judgment (count five); and a claim for attorney's fees and costs (count six).  Aetna removed the case to this court and now moves under Rules 12(b)(1), 12(b)(2), and 12(b)(6) to dismiss some of the 3,152 claims that it has identified as being processed and administered by Aetna.  ER opposes the motion, which the court is deciding on the briefs, without oral argument.

## II

The court begins by recounting the pertinent standards for deciding a motion to dismiss based on Rule 12(b)(1) or 12(b)(6).

## A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g.*, *Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id*.  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations

- 3 -

in the pleading and assumes them to be true.  If the allegations are sufficient to allege

jurisdiction, the court must deny the motion." *Id*. (citation omitted) (citing *Paterson*, 644

F.2d at 523).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party

asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that

jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)

(per curiam) (citations omitted).

B

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all

well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re*

*Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby*

*Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive

Aetna's motion to dismiss, ER must allege enough facts "to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough

to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S.

- 4 -

at 679 (second alteration in original) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "a formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Twombly*, 550 U.S. at 555).

III

For efficiency, the court will first take up Aetna's challenges under Rule 12(b)(6) to ER's state-law claims for negligent misrepresentation and unjust enrichment, although Aetna asserts them last in its motion to dismiss.

A

1

To state a claim for negligent misrepresentation under Texas law, ER must plausibly plead that

> (1) [Aetna] made a representation in the course of [its] business, or in a transaction in which [it] has a pecuniary interest; (2) [Aetna] supplied false information for the guidance of others in their business; (3) [Aetna] did not exercise reasonable care or competence in obtaining or communicating the information; and (4) [ER] suffered pecuniary loss by justifiably relying on the representation.

*TIB—The Indep. BankersBank v. Canyon Cmty. Bank*, 2014 WL 145284, at \*5 (N.D. Tex. Jan. 15, 2014) (Fitzwater, C.J.) (citing *Hurd v. BAC Home Loans Servicing*, LP, 880 F.Supp.2d 747, 762 (N.D. Tex. 2012) (Lynn, J.)).

ER alleges that Aetna made numerous material misrepresentations "during the request for payment, review of the claims, during negotiations and during an appeals process," Pet. (ECF No. 1-2) at ¶ 106, and that "as assignee[] of the insureds' claims," ER "relied on Aetna's misrepresentations in attempting to determine coverage information for Aetna member patients." *Id.* ¶ 110. ER also asserts that it "directly relied on Aetna's . . . misrepresentations in forming [its] businesses and creating [its] business model," and "directly relied on Aetna's misrepresentations that it would properly review claims and tender the usual and customary payment in a timely manner." *Id.* ¶ 112.

Aetna moves to dismiss this claim on the ground that ER has not plausibly alleged reliance or harm "because Aetna's alleged statements occurred *after* ER submitted [its] claims to Aetna and *after* Aetna adjudicated those claims. Thus, ER could not have relied on or been harmed by any such misrepresentations." Ds. Br. (ECF No. 6) at 24. Regarding ER's "business model" allegation, Aetna maintains that "ER admits [it is] out-of-network, and therefore cannot credibly allege that Aetna made any specific representations to [it] whatsoever regarding forming [its] business or business model." *Id.* The court agrees.

2

To the extent that ER is asserting a derivative negligent misrepresentation claim as assignee of Aetna's insureds' claims, it has not plausibly alleged that Aetna's insureds justifiably relied on any alleged misrepresentation. This is because all of the misrepresentations are alleged to have occurred *after* Aetna's insureds purchased their insurance policies, received emergency services at ER's FECs, and submitted their claims

to Aetna.  And insofar as ER is asserting a non-derivative negligent misrepresentation claim of its own, it has failed to plausibly plead that it suffered pecuniary loss by justifiably relying on any misrepresentation.  In its response brief, Aetna maintains that

> the negligent misrepresentations at issue are ongoing, and pertain to every claim for reimbursement [ER] continue[s] to present.  Each time [Aetna] made a misrepresentation *regarding reimbursement and its rights to deny reimbursement at the usual and customary rate*, [ER] relied on and continue[s] to rely on the misrepresentation in deciding whether and how to seek proper compensation for [its] services.

Ps. Br. (ECF No. 15) at 24.  In other words, ER appears to contend that, by providing false and/or misleading reasons for denying the claims of its insureds, Aetna somehow misled ER regarding the "deci[sion] whether and how to seek proper compensation for [its] services." *Id.*  But ER has not plausibly pleaded harm *as a result of Aetna's alleged misrepresentations* as opposed to the fact that the claims were in fact denied.

Accordingly, the court grants Aetna's motion to dismiss ER's negligent misrepresentation claim.

B

Aetna moves to dismiss ER's unjust enrichment claim on the ground, *inter alia*, that it is duplicative of ER's state-law contract claim.  ER responds that it has "clearly [pleaded] the claim as an alternative claim, which is permitted."  Ps. Br. (ECF No. 15) at 25.  The court disagrees.

"The law is clear that quasi-contractual claims are unavailable when a valid, express contract governing the subject matter of the dispute exists."  *Quintel Tech., Ltd. v. Huawei*

- 7 -

*Techs. USA, Inc.*, 2018 WL 446320, at *7 (E.D. Tex. Jan. 17, 2018). "A party can plead legal and equitable claims in the alternative, but only when one party disputes the existence of a contract governing the dispute." *TIB—The Indep. BankersBank*, 13 F.Supp.3d at 672 (quoting *Taliaferro v. Samsung Telecomms. Am., LLC*, 2012 WL 169704, at *9 (N.D. Tex. Jan. 19, 2012) (Fitzwater, C.J.)); *see also Fortune Prod. Co v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory. . . . That is because parties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." (citations omitted)). Because a contract (Aetna's plan documents) governs the dispute in this case—i.e., whether and in what amount Aetna was required to pay ER for the emergency services it provided to Aetna's insureds—alternative pleading is not available. *Id.* Accordingly, the court grants Aetna's motion to dismiss ER's claim under Texas law for unjust enrichment.[5]

IV

The court next considers Aetna's contention that ER's state-law claim for breach of contract based on claims for pre-2020 services must be dismissed under Rule 12(b)(6)

---

[5]Because the court is dismissing Aetna's negligent misrepresentation and unjust enrichment claims under Rule 12(b)(6), it will not address Aetna's argument under Rule 12(b)(2) that the court does not have personal jurisdiction over Aetna Health Management, LLC and Aetna Life Insurance Company with respect to these claims.

because ER has no right to sue under the Texas Emergency Care Statutes for amounts due.[6]

A

Sections 1271.155(a), 1301.0053(a), and 1301.155(b) of the Texas Insurance Code—collectively referred to as the Texas Emergency Care Statutes—mandate that health insurance companies pay out-of-network providers for emergency care rendered to their insureds "at the usual and customary rate." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 427 (Tex. 2023) (citing Tex. Ins. Code Ann. §§ 1271.155(a), 1301.0053(a), 1301.155(b) (West 2019)). In 2019 the Texas Legislature amended multiple provisions of the Insurance Code to address, *inter alia*, payment disputes between out-of-network emergency care providers and insurance companies. *Id.* at 428. The new provisions include "a mandatory binding arbitration process for disputes between an insurer and an out-of-network emergency-care physician over the amount the insurer must pay the physician for care rendered to an individual enrolled in the insurer's plan." *Id.*; *see also* Tex. Ins. Code Ann. §§ 1467.081-.089. An out-of-network provider or an insurance company cannot file suit for an out-of-network claim until after the conclusion of the arbitration proceeding on the issue. *Tex. Med. Res.*, 659 S.W.3d at 428-29; Tex. Ins. Code Ann. § 1467.085(a). But the arbitration process only applies to health care services rendered on or after January 1, 2020. *Tex. Med. Res.*, 659 S.W.3d at 429. For insurance claims that accrued

---

[6]Aetna also moves to dismiss ER's negligent misrepresentation and unjust enrichment claims on this basis. The court will not address this basis for Aetna's motion since it has already dismissed these claims in § III.

prior to 2020, the Supreme Court of Texas has unequivocally held that the Emergency Care Statutes do not create a private right of action. *Id.* at 427, 436.

## B

In its motion to dismiss, Aetna maintains that, to the extent ER's state-law claims are based on benefits claims for pre-2020 services, the substance of each claim is that ER is owed the "usual and customary rate" for its emergency services, "which reveals that these are claims for violations of the Emergency Care Statutes," under which there is no private right of action. Ds. Br. (ECF No. 6) at 6. Aetna contends that courts have "roundly rejected" attempts, such as ER's, "to manufacture a back door to the Emergency Care Statutes" through state-law contract and other claims; that ER cannot "make an end run" around the statutes by alleging that the Emergency Care Statutes' payment standards are incorporated into Aetna's health benefits plans; and that, accordingly, the court should dismiss ER's complaint as to the 249 health benefits claims for pre-2020 services. *Id.* at 6-7.

ER responds that its breach of contract claim is separate from any Emergency Care Statutes violation and that, because ER does not attempt to assert a "violation" of any of the Emergency Care Statutes, Aetna's argument does not affect ER's claims and cannot be a basis for dismissal. The court agrees.

## C

ER generally alleges that "Aetna repeatedly has ignored its obligations under Texas law, federal law, and the terms of its own plans to timely provide coverage at the usual and customary rate for Aetna members who present for emergency care at FECs, including

[ER]." Pet. (ECF No. 1-2) at ¶ 63.  But in support of its breach of contract claim, ER limits its allegations to Aetna's payment obligation under its own plans.  ER contends:

> *Pursuant to Aetna plans*, Aetna agreed to pay out-of-network providers, such as [ER], using a specified payment methodology (the usual and customary rate). [ER] provided covered services to Aetna insureds, and those insured[s] assigned their insurance contract benefits to [ER]. . . . [ER] submitted claims to Aetna for payment for medically necessary emergency services. However, Aetna failed to pay [ER] *in accordance with the terms of the insurance contracts*. . . . Aetna's failure to pay [ER] the amounts *required by the Aetna plans* constitutes *a breach of contract*.

Pet. (ECF No. 1-2) at ¶¶ 101-103 (emphasis added).  These allegations plainly state a claim for breach of contract[7]—i.e., the payment terms set out in Aetna's plans—and do not plead a claim for violation of the Emergency Care Statutes.  *Cf. Dall. Med. Ctr., LLC v. Molina Healthcare of Tex., Inc.*, 2021 WL 5071830, at *6 (Tex. App. Nov. 2, 2021, pet. denied) (mem. op.) (breach of contract claim was a "an improper repackaging of [plaintiffs'] statutory claim for which there is no standing" where plaintiffs alleged that contract stated that payment would be calculated "at the usual and customary rate or agreed upon rate" and sought payment "in accordance with those contracts *and Texas law*." (emphasis added)).

Accordingly, the court declines to dismiss this claim on the basis that ER has no right to sue under the Texas Emergency Care Statutes for amounts due.

---

[7]In Texas, a breach of contract claim requires proof of four elements: "(1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendant's breach of contract, and (4) damages to the plaintiff resulting from the breach." *Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 n.2 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003)); *see also Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied).

V

Aetna next contends that, to the extent that ER's breach of contract and ERISA claims are based on benefits claims for services provided post-2019,[8] these claims must be dismissed because ER does not have derivative standing to sue for post-2019 services.[9]

A

Article III of the United States Constitution confines the jurisdiction of a federal court to an actual "case[]" or "controvers[y]." U.S. Const. art. III, § 2. The standing doctrine implements this constitutional limitation by requiring the plaintiff to establish "a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (citation and internal quotation marks omitted). To establish constitutional standing, ER must demonstrate that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

---

[8]Aetna contends that there are 854 health benefits claims for services provided after 2019.

[9]Aetna also contends that ER's state-law claims for breach of contract and negligent misrepresentation (to the extent based on post-2019 services) should be dismissed because (1) the Emergency Care Statutes provide a right to sue to "determine the amount due," but not for violation of the statutes themselves and (2) ER has failed to allege completion of the gateway Texas Department of Insurance dispute resolution process. The court has already dismissed ER's negligent misrepresentation claim in § III. And because the court concludes that ER lacks standing to bring a breach of contract claim based on insurance claims for post-2019 services, it need not address these arguments.

(2016). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

ER alleges that it has derivative standing to bring the claims in this lawsuit. "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330, 333-34 (5th Cir. 2005). To establish standing to "bring [an] ERISA suit[] standing in the shoes of [its] patients," *North Cypress Medical Center Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015), a healthcare provider must demonstrate that it "obtain[ed] an assignment of benefits from [its patients]," and that its patients would have Article III constitutional standing "had [the patients] brought the claim themselves," *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 278 (5th Cir. 2025). The same is true for ER's state-law claim for breach of contract, which ER brings as an assignee. *See* Pet. (ECF No. 1-2) at ¶ 100 (alleging, in support of breach of contract claim that ER has "standing in [its] capacity as assignee[] to enforce the terms of the non-ERISA Aetna plans.").

B

Aetna contends that, under the Emergency Care Statutes, its insureds are not liable for any unpaid balance on claims for post-2019 emergency services; that because they cannot be billed for any remaining balance due after Aetna paid their claims, they will not suffer any concrete, particularized, actual, or imminent injury; that because Aetna's insureds have no claim to assign to ER, ER lacks derivative standing to sue; and that, under *Guardian Flight*,

- 13 -

ER's ERISA claim and state-law breach of contract claim must be dismissed to the extent based on post-2019 services.[10]

ER responds that, under *North Cypress*, which *Guardian Flight* did not abrogate, the denial of a plan benefit plainly constitutes a concrete and particularized injury to a beneficiary; that the fact that health plans must cover out-of-network emergency care is one of the bargained-for benefits of Aetna's plans; that Aetna's failure to cover that care by paying ER the total plan or coverage amount denies beneficiaries a plan benefit to which they are contractually entitled and constitutes an injury traceable to Aetna's conduct; and that the panel decision in *Guardian Flight* applies only to claims involving the No Surprises Act ("NSA"), and ER has agreed to dismiss from this case all claims covered by the NSA.[11]

In reply, Aetna posits, *inter alia*, that the insureds in this case, unlike the plan members in *North Cypress*, were never liable for their providers' balance bills[12] because the Texas balance-billing statutes prohibit it, and that although *Guardian Flight* addressed the balance billing prohibition in the NSA, that statute was merely "the source of the balance

---

[10]Aetna also makes the same contention concerning ER's state-law negligent misrepresentation claim. But the court need not address it since this claim is dismissed in § III.

[11]ER also notes in its response that a petition for writ of certiorari was filed in the *Guardian Flight* case on October 8, 2025. The Supreme Court denied that petition on January 12, 2026. *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 2026 WL 79855, at *1 (U.S. Jan. 12, 2026).

[12]"'Balance billing' refers to when the provider bills the patient for 'an amount greater than an applicable copayment, insurance, and deductible.'" *ERLC, LLC. v. Blue Cross Blue Shield of Tex.*, 2022 WL 4348471, at *3 n.2 (S.D. Tex. Sept. 19, 2022) (citation omitted).

billing prohibition," and the Emergency Care Statutes "do the same here." Reply (ECF No. 19) at 4.

C

To the extent that ER brings a state-law claim for breach of contract as an assignee of Aetna's members' "non self-funded ERISA plan claims" for services provided after January 1, 2020, ER lacks standing.

In *Guardian Flight* the Fifth Circuit addressed whether two air ambulance providers ("Providers") had derivative standing to assert the ERISA claims of insureds of defendant Health Care Service Corporation ("HCSC"). Based on the balance-billing prohibition in the NSA, the panel held that the Providers lacked standing because HCSC's beneficiaries did not suffer a concrete injury when HCSC refused to provide them out-of-network coverage benefits under the parties' contracts. *Guardian Flight*, 140 F.4th at 278. The panel explained:

> The NSA shields the beneficiaries from liability for any out-of-network coverage costs, so the beneficiaries have not suffered—and could not suffer—any concrete injury from HCSC's failure to cover medical bills that fall within the scope of the NSA. Further, the beneficiaries had nothing to gain or lose in the [individual dispute resolution ("IDR")] proceedings between Appellants and HCSC. That process exists entirely outside and independent of ERISA.

*Id.* (footnote omitted). The panel also rejected the Providers' argument that the injury to the beneficiaries was cognizable because "the beneficiaries have suffered a breach of contract and so have been denied a benefit of their bargain with HCSC," holding that "[t]his technical

violation, if it amounts to one, does no actual harm to the beneficiaries and is consequently an abstract theory insufficient for Article III injury." *Id.* (citing cases).

*Guardian Flight* addressed the NSA, which does not apply to the ER's state-law claims based on "non self-funded ERISA plan claims." But that does not make its rationale any less persuasive. Like the NSA, which "shields the beneficiaries from liability for any out-of-network coverage costs," *id.* (citing 42 U.S.C. § 300gg-135),[13] the Emergency Care Statutes mandate, in relevant part, that, for emergency care:

> an out-of-network provider . . . may not bill an insured in, and the insured does not have financial responsibility for, an amount greater than an applicable copayment, coinsurance, and deductible under the insured's preferred provider benefit plan that . . . is based on . . . the amount initially determined payable by the insurer[] or . . . if applicable, a modified amount as determined under the insurer's internal appeal process.

Tex. Ins. Code Ann. § 1301.155(d); *see also, e.g., id.* §§ 1271.155(g), 1301.0053(b). In other words, like the NSA, the Emergency Care Statutes shield Aetna's insureds from liability for any out-of-network coverage costs. Accordingly, for any insurance claims relating to services provided after January 1, 2020, the Emergency Care Statutes prohibit Aetna from balance-billing its insureds. These insureds, like the beneficiaries in *Guardian Flight*, did not suffer, and will not suffer, any concrete financial injury as a result of Aetna's failure to compensate ER at the "usual and customary rate." And to the extent that ER argues that

---

[13]42 U.S.C. § 300gg-135 provides that non-participating air ambulance providers "shall not bill, and shall not hold liable, [the] participant, beneficiary, or enrollee for a payment amount for such service furnished by such provider that is more than the cost-sharing amount for such service[.]"

Aetna's members suffered harm that "stands independent of any financial harm," Ps. Br. (ECF No. 15) at 10, ER has failed to plausibly allege any such harm. *See* Pet. (ECF No. 1-2) at ¶¶ 100-104 (alleging that ER submitted claims to Aetna for payment for emergency services; that Aetna failed to pay ER in accordance with the terms of the insurance contracts; that "Aetna's failure to pay [ER] the amounts required by the Aetna plans constitutes a breach of contract"; and that, as a result, ER has been damaged and is "entitled to full payment due from Aetna"). Nor has it established that any alleged non-financial harm amounts to more than an "abstract theory insufficient for Article III injury." *Guardian Flight*, 140 F.4th at 278 (citing cases); *see also Spokeo*, 578 U.S. at 340 (explaining that, for standing purposes, "a 'concrete' injury must be '*de facto*'; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" (citations omitted)).

Accordingly, ER lacks standing to assert its state-law claim for breach of contract as an assignee of Aetna's insureds' "non self-funded ERISA plan claims" for services provided after January 1, 2020.

D

ER contends in its response brief that the court should follow *North Cypress*, rather than *Guardian Flight*, because "[u]nder the rule of orderliness, one panel of the court may not overturn another panel's decision absent an intervening and unequivocal change in the law that creates a conflict between the two opinions." Ps. Br. (ECF No. 15) at 9. In *North Cypress* the panel held that a hospital (which had been assigned the patient's benefits) had

standing to pursue an ERISA claim against the patient's insurance company because

> a patient suffers a concrete injury if money that she is allegedly owed contractually is not paid, regardless of whether she has directed the money be paid to a third party for her convenience. The patient in this circumstance is being denied use of funds rightfully hers.  The fact that she has directed the funds elsewhere does not change that reality.  From a different angle, failure to pay also denies the patient the benefit of her bargain. In purchasing her Cigna plan she agreed to pay for coverage at out-of-network providers like North Cypress, and Cigna is failing to uphold the bargain by paying for covered services.

*N. Cypress Med. Ctr.*, 781 F.3d at 193 (footnotes omitted).  But in the present case, there is no allegation that Aetna contractually owed *its members* any money that was not paid. Moreover, *North Cypress* predates the NSA.  Accordingly, the panel in *North Cypress* did not have the opportunity to address the question of Article III standing in the context of a complex regulatory scheme that insulates the insured from further liability.

E

The court now turns to ER's ERISA claim.  To the extent that Aetna moves to dismiss this claim for lack of standing based on the panel decision in *Guardian Flight*, the court denies Aetna's motion for the reasons set out in ER's response.

> The NSA took effect on January 1, 2022 and covered the billing for care from that point on.  The NSA has no retroactive application.  As such, medical services provided before this date, even if still unpaid, do not have to comply with the Act. There are no post January 1, 2022 claims involved in this case because Plaintiffs have agreed to dismiss them[.]

Ps. Br. (ECF No. 15) at 10 (citations omitted).  The NSA does not apply to ER's ERISA claim because ER has agreed to dismiss "claims that involve the NSA."  *Id.* at 10 n.5.  And

Aetna does not argue with respect to the remaining insurance claims, i.e., those that pre-date the NSA, that its insureds (and, derivatively, ER) do not have Article III standing.

VI

Aetna moves to dismiss ER's ERISA claim based on "all claims for pre-2022 services," including 10 Medicare Advantage claims, on the ground that the Affordable Care Act's ("ACA's") "greatest-of three" rule does not apply to FECs.  Ds. Br. (ECF No. 6) at 12.

A

ER's ERISA claim is based, *inter alia*, on the allegation that Aetna violated ACA's greatest-of-three requirement, which requires an insurer to pay an out-of-network provider of "emergency services" in an amount at least equal to the greatest of: "(1) the median in-network rate; (2) the rate 'calculated using the same method the plan generally uses to determine payments for out-of-network services;' or (3) the Medicare rate." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 356 F.Supp.3d 612, 617 (N.D. Tex. 2019) (Cummings, J.) (quoting 29 C.F.R. § 2590.715-2719A(b)(3)(A)-(C)).

In support of its motion, Aetna contends that the greatest-of-three requirement does not apply to FECs because, under the Emergency Medicine Treatment and Active Labor Act ("EMTALA"), only hospitals are required to provide medical screening and emergency services; EMTALA defines a hospital as an institution that primarily provides inpatient services and is licensed as a hospital under local or state law; FECs do not provide inpatient services and are not licensed as hospitals; because FECs are not "hospitals," they are not required to provide services under EMTALA; and, therefore, services provided by FECs are

not subject to the greatest-of-three rule.  Regarding the 10 Medicare Advantage claims on which ER bases its ERISA claim, Aetna contends that the greatest-of-three requirement does not apply because, under 42 C.F.R. § 422.214(a)(1), out-of-network providers are required to accept as payment in full the amounts that the provider could collect if the beneficiary were enrolled in original Medicare.

In response, ER maintains that ACA does apply to FECs because ACA's definition of "emergency services" defines the *type* of services covered, not where the services must be rendered[14]; FECs and traditional hospitals are both licensed, state-sanctioned providers of the same essential health benefit required by ACA; and there is no indication that ACA intended to defeat its own purpose by arbitrarily limiting coverage to care provided in emergency rooms that are physically attached to traditional hospitals.  It posits next that none of its causes of action depends on ACA or on Aetna's reimbursement obligations under ACA:

---

[14]*See* 42 U.S.C. § 300gg-19a(b)(2)(B), defining "emergency services" to mean, with respect to an emergency medical condition:

> (I) a medical screening examination (as required under section 1395dd of this title) that is within the capability of the emergency department of a hospital, including ancillary services routinely available to the emergency department to evaluate such emergency medical condition, and
> (ii) within the capabilities of the staff and facilities available at the hospital, such further medical examination and treatment as are required under section 1395dd of this title to stabilize the patient.

> Aetna's obligation to reimburse FECs at a usual and customary rate arises from multiple sources in addition to the ACA, *including Aetna's own plans* and state statutes.  Accordingly, even if the ACA did not apply to FECs (which it does) Aetna would still be required to reimburse Plaintiffs in accordance with the allegations set forth in Plaintiff's Original Petition.

Ps. Br. (ECF No. 15) at 12 (bold font omitted).

Aetna replies, *inter alia*, that it has demonstrated that the plain statutory and regulatory language "did not apply to FECs before 2020," D. Reply (ECF No. 19) at 5; that ER's assertion that it provides the same services as hospital emergency rooms "is meaningless to show that the ACA included them before 2020," *id.*; and that, regardless, ER has waived a claim for reimbursement under the greatest-of-three requirement.

B

ER brings its ERISA claim to recover benefits due "under the terms of Aetna plans," Pet. (ECF No. 1-2) at ¶ 90, and alleges, in support of this claim, that

> Aetna has violated the plain terms of its plans and abused its discretion in administration of the plans at issue by significantly underpaying claims for the out-of-network services provided to Aetna members from FECs, including [ER].  Aetna has failed to remit payment for those claims at the usual and customary level that its plans require.

*id.* ¶ 92.  ER also asserts that, "[u]nder the terms of the Aetna plans, Aetna members are entitled to a benefit consisting of coverage for emergency care and payment *consistent with the plan document and other legal requirements*."  *Id.* ¶ 96 (emphasis added).  These

- 21 -

allegations are sufficient at the pleading stage to state a claim for violating ERISA.[15]

Whether Aetna was required under the terms of its plans or under federal law to reimburse

ER at a higher rate is a question to be addressed at a later stage of this case. *See, e.g.*, *Piney*

*Woods ER III, LLC v. Blue Cross & Blue Shield of Tex.*, 2021 WL 7184947, at *4 (E.D. Tex.

June 29, 2021) ("Plaintiffs' amended complaint ultimately alleges that, for various plans and

in various ways, Defendant failed to adequately reimburse Plaintiffs for the emergency care

services rendered to its insureds. While Defendant's interpretations of the cited statutes may,

at a later stage, be deemed correct, its argument that these statutes cannot or do not mean

what Plaintiffs claim they mean does not mandate dismissal at the motion to dismiss stage.").

Accordingly, the court denies this ground of Aetna's motion to dismiss.

---

[15]*See, e.g.*, *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 729 (5th Cir. 2018) (allegations sufficient to state a claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B) where hospital credibly alleged, *inter alia*, "(1) it provided health care services to patients insured by the Insurers; (2) the Hospital is an out-of-network provider for the purposes of the claims here; (3) the Hospital verified coverage with the Insurers before providing services; (4) the Hospital received a valid assignment of benefits; (5) the Hospital timely submitted claims to the Insurers for payment; (6) the Insurers uniformly failed to pay the claims according to the terms of the employee welfare benefit plan documents or individual insurance policies; (7) many of the same coverage and payment provisions are used across different health plans; (8) the Insurers must pay out-of-network providers some version of the 'reasonable and customary' amount or the 'usual, customary, and reasonable' amount; (9) representative plan terms require reimbursement of out-of-network providers at 80% of 'reasonable and customary' expenses after the deductible; and (10) the Insurers reimbursed the Hospital at an average rate of 11%.").

VII

Aetna maintains that it is not liable for any underpayment with respect to the 188 claims against plans administered by Meritain Health, Inc. ("Meritain"), an affiliate of Aetna that is an independent administrator of self-funded employer health plans.

ER responds that dismissal of the "Meritain claims" is premature:

> [ER] contend[s] that Aetna controls administration of the [Meritain] claims and would thus be liable for the sums that might be due and owing to [it]. Further, there is no proof of what the agreement between Aetna and Meritain is regarding these claims, which is information that would solely be in the possession of Aetna. Since no discovery has occurred, Plaintiffs are not able to review any of these agreements.

Ps. Br. (ECF No. 15) at 12.

As a preliminary matter, the court notes that the lack of discovery does not preclude it from granting a motion under Rule 12(b)(6), which is concerned with the adequacy of the pleadings. Nevertheless, the court denies this ground of Aetna's motion because it is not clear from the pleadings and other documents the court is permitted to consider in deciding Aetna's motion that ER will be unable to recover from Aetna with respect to the 188 claims that Aetna has allegedly identified as having been administered by Meritain. Accordingly, the court denies this ground of Aetna's motion to dismiss.

VIII

Aetna moves to dismiss ER's claims for Texas Teachers Retirement System ("TRS") plan benefits under the doctrine of sovereign immunity.[16]

A

Absent an unequivocal waiver or congressional abrogation, the Eleventh Amendment bars suits in federal court by a state's citizens against their own state or a state agency or department. *See* U.S. Const., amend. XI; *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999). "Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing *Vogt v. Bd. of Comm'rs*, 294 F.3d 684, 688-89 (5th Cir. 2002)). The question is whether the lawsuit "is effectively against the sovereign state." *Earles v. State Bd. of Certified Pub. Accountants of La.*, 139 F.3d 1033, 1037 (5th Cir. 1998).

The Fifth Circuit has identified six factors, often referred to as the "*Clark* factors," to help answer this question:

> (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether it has the right to hold

---

[16]"[B]ecause sovereign immunity is a jurisdictional issue, it is properly addressed under the Rule 12(b)(1) standard." *Anibowei v. Barr*, 2019 WL 623090, at *3 (N.D. Tex. Feb. 14, 2019) (Fitzwater, J.).

and use property.

*Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 178-79 (5th Cir. 2023) (citing *Clark v. Tarrant County*, 798 F.2d 736, 744-45 (5th Cir. 1986)).   No single factor is determinative.   *U.S. ex rel. Barron v. Deloitte & Touche, LLP*, 381 F.3d 438, 440 (5th Cir. 2004).   They aim to help the court "determine 'if the state is the real, substantial party in interest because the suit seeks to impose a liability which must be paid from public funds in the state treasury.'"   *Id.* (quoting *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999)); *see also Carter v. Seamans*, 411 F.2d 767, 770 (5th Cir. 1969) ("The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" (citation omitted)).   Because the "Eleventh Amendment exists mainly to protect state treasuries," the "weightiest factor" is the "source of the entity's funding" or, in other words, "whether the state would be liable for a judgment against the defendant.'"   *Barron*, 381 F.3d at 440 (quoting *Hudson*, 174 F.3d at 687).

B

Aetna contends that it is an agent of the State of Texas and that permitting suit against it would effectively be permitting suit against the state itself. In support, it relies on its administrative services contracts ("ASCs") with TRS, maintaining that these contracts (1) identify Aetna as a "fiduciary solely for benefit determination and review of denied claims for benefits," Ds. Br. (ECF No. 6) at 15 (quoting Ds. App. (ECF No. 6-2) at 50, 54); (2) state

- 25 -

that "Aetna shall not be liable for the payment of claims under the Plan," *id.* (quoting Ds. App. (ECF No. 6-2) at 38); (3) state that "Aetna is not and shall not be considered the insurer or underwriter of the liability of the Plan to provide benefits for Plan Participants," *id.* (quoting Ds. App. (ECF No. 6-2) at 38, 58); (4) require Aetna "to file an appropriate motion to dismiss based on sovereign immunity" when it "is a named party to a legal action arising in connection with [the TRS plan]" or the ASC involving a claim for benefits under the TRS plan, *id.* (alteration in original) (quoting Ds. App. (ECF No. 6-2) at 43, 56); (5) specifically reserve TRS's right as the final decision-maker with respect to eligibility to participate in the plans[17]; (6) state that the TRS plans are to be funded exclusively from the assets of the TRS Trust, which "shall be the exclusive source for all funding of benefits, costs, payments, liabilities and expenses arising under the [plan]," *id.* at 17 (alteration in original) (quoting Ds. App. (ECF No. 6-2) at 38); and (7) contain reciprocal indemnity provisions that require TRS—if Aetna obtains approval from the Texas Legislature—to indemnify Aetna for losses from "claims, demands or lawsuits brought against [Aetna] by third parties in connection

---

[17]Aetna argues that the ASCs are similar to the contract at issue in *Kirby v. Health Care Service Corp.*, 88 F.Supp.3d 717 (W.D. Tex. 2015), because they disclaim broad agency but specifically reserve TRS's right as the final decision-maker. But the portion of the ASCs that Aetna quotes describes TRS's authority to determine eligibility *to participate* in the plans; they do not give TRS final decision-making authority or discretion to determine claims or claim coverage, as was the case in *Kirby*. *See id.* at 721 (finding insurance company was an arm of the state where, under the terms of the parties agreement, "TRS has final decision-making authority and discretion to determine and interpret the intent, scope, design, meaning, and implementation [of the TRS plan,] *including but not limited to the issue as to whether or not coverage exists* under [the TRS Plan] in a particular situation." (emphasis added) (second alteration in original)).

with the exercise of its powers and duties hereunder, except to the extent that acts attributable

to [Aetna's] employees are not in compliance with [the ASC's performance standards]," *id.*

at 17-18 (alterations in original) (quoting Ds. App. (ECF No. 6-2) at 44, 57).  Regarding the

*Clark* factors, Aetna contends that

> [i]t is indisputable that TRS is "an arm of the [S]tate" and that the TRS plans are funded solely by the State.  The ASCs reiterate this fact by expressly stating that Aetna is not liable for claims payments.  Aetna also has limited autonomy in claims adjudication.  TRS reserves final authority to determine plan eligibility and Aetna is TRS's fiduciary for benefits determinations.  Aetna's duties under the ASCs are not limited by locale but apply to TRS claims statewide.  Although the ASCs acknowledge that Aetna may be sued in its own name, they do not expressly permit it.  Regardless, even if Aetna is sued in its own name, and even if TRS is not a party to that suit, the ASCs require Aetna to assert an immunity defense.

*Id.* at 18 (second alteration in original) (citations omitted).

ER responds that Aetna's immunity argument is premature.  It contends that the

"heavily redacted, incomplete and seemingly random" portions of the ASCs that Aetna

attaches to its motion are insufficient to show an entitlement to sovereign immunity, Ps. Br.

(ECF No. 15) at 16; that Aetna has failed to discuss the indemnity provision in the ASCs that

requires Aetna to indemnify TRS from "any and all claims, causes of action, liabilities,

damages, losses, lawsuits, liens, judgments, and expenses (including attorney fees) of any

nature, kind or description . . . arising out of or relating to the performance of, or failure to

perform, negligence, willful misconduct or breach of obligations under [the ASCs] by

[Aetna]," Ps. Br. (ECF No. 15) at 16 (quoting Ds. App. (ECF No. 6-2) at 42); that there has

- 27 -

been no discovery yet into any proposals or related contractual documents that might inform the scope of liability between Aetna and TRS; and that, at this juncture, Aetna has not met its burden to demonstrate that it is entitled to sovereign immunity relative to the TRS claims.

C

Generally, the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming*, 281 F.3d at 161 (citations omitted). But there are exceptions. Relevant here, "an entity asserting sovereign immunity bears the burden of demonstrating that it is an 'arm of the state.'" *Bonin v. Sabine River Auth.*, 65 F.4th 249, 253 (5th Cir. 2023) (citing cases); *see also Springboards to Educ*, 62 F.4th at 179 ("The burden of proof [on the question whether an entity is an arm of the state] rests with the entity asserting immunity." (citing *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000)); *Cutrer v. Tarrant Cnty. Loc. Workforce Dev. Bd.*, 943 F.3d 265, 270 (5th Cir. 2019) ("[A]n entity that asserts sovereign immunity under *Clark* bears the burden of demonstrating that [it is] an 'arm of the state.'" (citing *Skelton*, 234 F.3d at 297)).

Without suggesting a view on whether Aetna will prevail on its sovereign immunity defense at a later stage in this case, the court holds that Aetna has not met its burden on the present record to prove by a preponderance of the evidence that it is an arm of the state. *See, e.g.*, *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981) (holding that preponderance of the evidence standard applies in a Rule 12(b)(1) factual attack).

As noted above, the second factor in the *Clark* inquiry "is the most important factor." *Hudson*, 174 F.3d at 687; *see also Springboards to Educ.*, 62 F.4th. at 180 ("Factor two

- 28 -

carries the most weight because one of the Eleventh Amendment's central purposes is to protect state treasuries from involuntary liability." (citing cases)). "In assessing this second factor, [the court] conduct[s] inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state's liability for the defendant's general debts and obligations." *Bonin*, 65 F.4th at 256 (quoting *Hudson*, 174 F.3d at 682). It is not clear from the present record whether a money judgment against Aetna would be enforceable against the state under the ASCs, which contain "reciprocal indemnity provisions," Ds. Br. (ECF No. 6) at 17, that seemingly conflict.[18] Not only has Aetna failed to explain how these provisions work together in practice; it has heavily redacted the attached ASCs such that the court is unable to interpret their terms on its own. *See, e.g.*, *Piney Woods ER III, LLC v. Blue Cross & Blue Shield of Tex.*, 2022 WL 4004790, at *12 (E.D. Tex. Mar. 17, 2022) (declining to dismiss TRS claims based on sovereign immunity "without a sufficient record" because "[w]ithout the contracts, the Court is unable to analyze the agency relationship between Defendant and TRS or the impact of an indemnity clause[.]").

---

[18]*Compare, e.g.*, Ds. App. (ECF No. 6-2) at 42 (ASC stating that Aetna "shall indemnify, protect, defend . . . and hold harmless [TRS] from and against any and all claims, causes of action, liabilities, damages, losses, lawsuits liens, judgments, and expenses (including attorney fees) of any nature, kind or description . . . arising out of or relating to the performance of, or failure to perform, negligence, willful misconduct or breach of obligations under this Contract") *with id.* at 44 (ASC stating that "TRS agrees to save [Aetna] harmless by indemnifying [Aetna], up to the amount of available funding appropriated by the Texas Legislature, for losses, liabilities, damages, expenses or other costs or obligations in [certain enumerated] areas [including] resulting from and arising out of claims, demands or lawsuits brought against [Aetna] by third parties in connection with the exercise of its powers and duties hereunder.").

Accordingly, the court denies Aetna's motion to dismiss ER's claims for TRS plan benefits. Aetna may re-urge this ground for dismissal at a later procedural stage, if it has grounds to do so. *See*, *e.g.*, *Hous. Home Dialysis v. Blue Cross & Blue Shield of Tex.*, 2018 WL 5249996, at *9 (S.D. Tex. Oct. 22, 2018) (denying motion to dismiss on sovereign immunity grounds where the record was "unclear whether Patients . . . were insured" under University of Texas health plans, but permitting "parties [to] supplement the record and raise this issue at summary judgment or, if appropriate, at trial.").

IX

Aetna moves under Rule 12(b)(6) to dismiss ER's claim for ERISA plan benefits on the ground that ER has failed to plausibly allege that it exhausted ERISA plan administrative remedies.

A

"Generally, the Fifth Circuit requires that 'claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits.'" *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F.Supp.2d 294, 303 (S.D. Tex. 2011) (quoting *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000)). "Exhaustion of administrative remedies, however, is not a jurisdictional bar; it is an affirmative defense." *Id*. (quoting *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc*., 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010)). "[A] complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense." *Id*. at 304 (quoting *Am. Surgical*

- 30 -

*Assistants, Inc.*, 2010 WL 565283, at *2); *see also Ford v. Freemen*, 388 F.Supp.3d 692, 708 (N.D. Tex. 2019) (Boyle, J.) ("The proper procedural vehicle for assertion of the affirmative defense of lack of ERISA administrative exhaustion is by way of properly supported motion for summary judgment." (quoting *Thibodeaux v. Prudential Ins. Co. of Am.*, 2008 WL 5397236, at *1 (W.D. La. Oct. 30, 2008)).

B

Even if the court assumes *arguendo* that ER had the burden to plausibly plead exhaustion, ER has alleged facts that enable the court to draw the reasonable inference that an exception to the exhaustion requirement may apply. "[E]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust administrative remedies would be a patently futile course of action." *Tex. Gen. Hosp., LP v. United Healthcare Servs., Inc.*, 2016 WL 3541828, at *5 (N.D. Tex. June 28, 2016) (Lynn, C.J.) (quoting *N. Cypress Med. Ctr.*, 782 F.Supp.2d at 304). ER alleges in its state-court original petition that it has either filed appeals to Aetna or has declined to because doing so would be futile. It asserts that Aetna has routinely denied its appeals without any substantive explanation or has simply failed to respond to the appeals; that Aetna has refused to provide supporting documentation or explain how it arrives at its reimbursement rates; that Aetna's tactics have prevented it from engaging in an actual and good faith appeals process necessary to obtain reimbursement at the usual and customary rate required by ERISA and Texas law; and that

- 31 -

[i]n cases where the internal appeal process may not have been exhausted, full exhaustion is excused where the appeals process would be futile because a review of [ER's] own appeals history clearly demonstrates that, in the claims actually appealed, Aetna failed to reimburse [ER] at the usual and customary rate. . . . As far as [ER is] aware, in all appealed cases by [ER], Aetna has yet to reverse its decision and pay the FEC at the usual and customary rate for the services provided as reflected in the billed amount.   Indeed, in direct communications anticipating this instant litigation, Aetna unconditionally and uniformly denied all amounts claimed. . . . Further appeals and/or mediation are not only rendered futile by Aetna's treatment of the subject claims, but the sheer volume and nature of the claims . . . make such processes infeasible and necessitate the present suit.

Pet. (ECF No. 1-2) at ¶¶ 81-82.  These allegations are sufficient at the pleadings stage to plausibly allege the futility exception to ERISA's exhaustion requirement.  Accordingly, the court denies this ground of Aetna's motion to dismiss.

X

Aetna moves to dismiss ER's state-law claims related to any ERISA plan on the ground that these claims are preempted by ERISA.[19]

A

Under ERISA, there are two types of preemption.  "Complete preemption" arises under ERISA § 502, the statute's civil enforcement provision, which provides, in relevant part, that a participant or beneficiary of an ERISA-regulated plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms

---

[19]Because the court is dismissing ER's negligent misrepresentation and unjust enrichment claims, it will not address whether these claims, to the extent they relate to any ERISA plan, would be preempted by ERISA.

of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). If complete preemption exists, ERISA offers the sole framework for relief. *See Aetna Health*, 542 U.S. at 209.

The other form of ERISA preemption—"conflict preemption"—arises under ERISA § 514. This section provides that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any [ ERISA] plan[.]" 29 U.S.C. § 1144(a). In determining whether state-law claims "relate to" a plan, courts examine: "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006) (citation omitted). If so, the claim must be dismissed. *See Cardona v. Life Ins. Co. of N. Am.*, 2009 WL 3199217, at *3 (N.D. Tex. Oct. 7, 2009) (Fitzwater, C.J.).

B

ER brings its breach of contract claim in its capacity as an assignee. In support of this claim, ER alleges that it submitted claims to Aetna for medically necessary services; that

- 33 -

Aetna failed to pay ER "in accordance with the terms of the insurance contracts," Pet. (ECF No. 1-2) at ¶ 102; that this "failure to pay [ER] the amounts required by the Aetna plan constitutes a breach of contract," *id.* ¶ 103; and that ER is therefore entitled to full payment due from Aetna.

"[A]ny state-law cause of action that duplicates, supplements, or supplants" ERISA's civil enforcement provision (§ 502) is completely preempted. *See Aetna Health Inc.*, 542 U.S. at 208-09. Section 502 authorizes private suits "brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a). Accordingly, "claims for breach of contract due to unpaid benefits under an ERISA plan are preempted under § 502." *Meyers v. Tex. Health Res.*, 2009 WL 3756323, at *5 (N.D. Tex. Nov. 9, 2009) (Fitzwater, C.J.); *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 438 (5th Cir. 2003) (en banc) (noting that a claim "to recover benefits . . . under the terms of [a] plan" or a claim "to enforce . . . rights under the terms of [a] plan" is completely preempted under Section 1132(a)). Here, ER's breach of contract claim seeks "the amounts required by the Aetna plans." Pet. (ECF No. 1-2) at ¶ 103.

Accordingly, to the extent that this claim is based on the denial of benefits under an ERISA-regulated benefit plan, the court holds that ERISA completely preempts it.

XI

To summarize, the court dismisses ER's state-law claims for negligent misrepresentation and unjust enrichment under Rule 12(b)(6); dismisses ER's state-law breach of contract claim based on benefits claims for services provided *after* January 1, 2020

- 34 -

under Rule 12(b)(1) for lack of standing; and dismisses ER's state-law breach of contract claim based on benefits claims related to an ERISA plan under Rule 12(b)(6) on the ground that these claims are preempted by ERISA. To the extent not dismissed, ER's state-law contract claim and federal ERISA claim remain pending.

*   *   *

For the reasons explained, the court grants in part and denies in part Aetna's motion to dismiss.

**SO ORDERED**.

April 8, 2026.

Sidney A. Fitzwater

SIDNEY A. FITZWATER
SENIOR JUDGE